## J. W. CORNISH v. E. E. HOOKER ET AL.

### APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF MONROE COUNTY.

Argued March 9, 1891—Decided March 23, 1891.

1. An assignment of error to the admission of evidence which does not set out the evidence admitted under the offer, is not in compliance with the Rules of Court, and will not be considered.
2. When, by the verdict of the jury, an erroneous admission of evidence to explain a supposed ambiguity in a written contract is rendered harmless to the party objecting, no cause for a reversal of the judgment is presented.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 182 July Term 1880, Sup. Ct.; court below, No. 30 May Term 1889, C. P.

On May 9, 1889, James W. Cornish brought assumpsit against Edward E. Hooker, Sr., and Edward E. Hooker, Jr., partners doing business as E. E. Hooker & Son. Issue.

At the trial, on June 3, 1890, the plaintiff proved and put in evidence a contract under seal, dated September 27, 1887, between himself and the defendants, whereby the defendants engaged the services of the plaintiff for the period of three years from April 1, 1888, and covenanted to pay therefor the

sum of $500 each year, the contract containing the following provisions:

" The said James W. Cornish hereby agrees to give the said E. E. Hooker & Son his services, in accordance with the above, and to devote his whole time and attention to superintending, managing and working the farm of E. E. Hooker, at Mt. Pocono, Monroe county, Pa., connected with the Pocono Mountain House, and everything pertaining thereto, and to assist the said E. E. Hooker & Son in and about the said Pocono Mountain House; the engagement and discharge of employees to belong to the said E. E. Hooker & Son.

" The said E. E. Hooker & Son agree to build and provide for the said James W. Cornish and his family a separate cottage, to be used and occupied by the said James W. Cornish and his family, during the period, from about the middle of April of each year and until the Pocono Mountain House is closed and the family of E. E. Hooker & Son move over into their large cottage, when the said James W. Cornish and his family are to join them and jointly occupy the same during the winter.

" The said James W. Cornish, at his separate cottage, is to furnish accommodations for such hands as the said E. E. Hooker & Son may employ to work on said farm, or in or about the said Pocono Mountain House. The said E. E. Hooker and son to provide the said James W. Cornish with the proper and necessary perquisites in the way of food, etc., for the maintenance of said men.

" The said James W. Cornish is to provide for, bring to said farm, replace, and keep thereon for the benefit thereof two horses, wagon, harness and mowing machine; all expenses for repair of said wagon, harness and mowing machine and shoeing of said horses to be at the expense of said E. E. Hooker & Son."

Evidence was then introduced tending to show that, in the spring of 1888, the plaintiff moved to Mt. Pocono with his family, and brought with him the stock and implements mentioned in the contract, besides household goods and furniture necessary for house-keeping; that he and his family occupied a part of the large cottage until June 14th following, when he moved into the smaller cottage provided for him by the defend-

Charge of Court below.

ants; that he was in the constant service of the defendants, as stipulated in the contract, until about September 7th, when the defendants refused to continue him in their employment; that he remained on the property, however, and on December 31, 1888, a notice to quit on April 1st following was served upon him; that, besides the horses brought to Mt. Pocono by the plaintiff, the defendants kept several horses, and all were fed together from a common supply of feed furnished by the defendants; that the plaintiff lodged and boarded other employees of the defendants, in the cottage occupied by him, and the food was furnished by the defendants by the quantity; and that about January 15, 1889, the defendants refused to supply the plaintiff with provisions for his family and feed for his horses any longer, and he left on April 1st following. The plaintiff claimed to recover $500 for one year's service, less $100 paid; board for himself and family from January 15 to April 1, 1889, 75 days, at 80 cents per day, $60; feed for two horses for the same period, at 40 cents per day, $30; damages for the breach of the contract for three years of service, $50; in all $540. The defendants introduced testimony to show that they were justified in discharging the plaintiff because of his incompetency, disobedience, and failure to perform the contract on his part.

At the close of the testimony, the court DREHER, P. J., charged the jury in part as follows:

[In this contract, there is no specific provision that the defendants were to furnish food or provisions for the plaintiff's family, or that they were to furnish food and fodder for the horses. There is in that respect an ambiguity in this written contract; and therefore, we permitted the plaintiff to introduce evidence that it was the understanding between the parties that all the provisions necessary at this cottage for the use of his family were to be furnished by the defendants, and also that the horses were to be fed from the feed and fodder of the defendants on the farm.] [15] . . . .

As we look upon this case, gentlemen of the jury, it comes down to the simple question, whether this plaintiff performed his duty to his employer at that place; or whether, if you find that the defendants discharged him, he was there ready and

Opinion of the Court.

willing afterwards to perform his duty. If he was, if he did perform his duty, and these defendants without reasonable cause discharged him, then we say to you he is entitled to recover. If he did not perform his duty faithfully, then he is not entitled to recover anything. . . . .

[If you find in favor of the plaintiff, the plaintiff will be entitled to recover $400 for the balance of the year, with interest from April 1, 1889. And if you find that it was the understanding and agreement of the parties that defendants should furnish him with provisions for his family, and also horse feed, he would be entitled to recover for those two items from the time the defendants refused to furnish him, which the plaintiff alleges was the fifteenth of January.] [16]

—The jury returned a verdict in favor of the plaintiff for $428. Judgment having been entered, the defendants took this appeal, assigning for error, inter alia :

7. " The court erred in admitting evidence of the value of feed for two horses per day, as set forth in bill of exception on page 49 of appendix. The objection to this evidence was that there was nothing in the agreement obliging Mr. Hooker to find feed for the horses. It was therefore immaterial and irrelevant."

8. " The court erred in admitting evidence of the value of board for plaintiff, his wife, and family during the time they furnished their own food, as set forth in bill of exception on page 50 of appendix. The objection to this evidence was that there was nothing in the agreement binding defendants to furnish food for plaintiff, his wife and family. The evidence was therefore irrelevant and immaterial."

15, 16. In the portions of the charge embraced in [ ] [15] [16]

*Mr. S. Holmes*, for the appellants.
Counsel cited : Martin v. Berens, 67 Pa. 459.

*Mr. J. B. Storm*, for the appellee.
Counsel cited : Susq. Ins. Co. v. Cusick, 109 Pa. 164 ;. Story on Cont., 5th ed., § 823; Phillips v. Meily, 106 Pa. 536 ; Selden v. Williams, 9 W. 9 ; Caley v. Railroad Co., 80 Pa. 363.

PER CURIAM :

None of the assignments of error in regard to the admission of evidence are in conformity to the Rules of Court, and for this reason have not been considered.

Statement of Facts.

We do not agree with the learned judge of the court below that there was an ambiguity in the written contract between the parties, as to the food or provisions of the plaintiff's family, or as to the food and fodder for the horses. This, however, is not important, as the evidence clearly shows the construction placed upon the contract by the parties themselves. The plaintiff's family were provided with food by the defendants, and his horses with fodder, until this difficulty commenced. We may safely assume that this was what they understood the contract to mean. We are spared any discussion of this question, by the fact that if the ruling of the court, as set forth in the fifteenth assignment, was erroneous, it did the defendants no harm. The jury evidently found for the plaintiff only the amount of the year's wages, excluding therefrom the claim for board for the plaintiff's family and the keep of his horses.

Judgment affirmed.

